IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MARK PEARSON & DEEVEE PEARSON                           PLAINTIFFS

v.                              No. 4:11-cv-00538 KGB

PULASKI COUNTY SPECIAL SCHOOL DISTRICT                  DEFENDANT

### OPINION AND ORDER

This action to recover attorneys' fees as a prevailing party under the Individuals with Disabilities Education Improvement Act ("IDEA") is before the Court on the parties' cross-motions for summary judgment.

**I.     Background**

The plaintiffs, Mark Pearson and DeeVee Pearson, are the parents of W.P., a child with a disability. On November 18, 2010, the Pearsons filed a complaint with the Arkansas Department of Education, alleging that the Pulaski County Special School District ("PCSSD") failed to provide W.P. a free and appropriate public education ("FAPE") during the 2010-2011 school year by failing to provide an appropriate individual education program ("IEP") for W.P. The Pearsons sought compensatory education services, development of an appropriate IEP, a comprehensive evaluation of W.P., occupational therapy, and reimbursement for transportation services.

W.P. transferred to PCSSD in June 2010. Prior to enrolling in PCSSD, W.P. was a student in the Little Rock School District ("LRSD"). Dkt. No. 1, at 11. While enrolled in LRSD, W.P. was provided accommodations for his disability under a Section 504 educational plan. *Id.* W.P. was identified by LRSD as being eligible for special education services at the end of the 2009-2010 school year. *Id.* On June 4, 2010, LRSD developed an IEP for W.P. that

proposed that W.P. receive his education services in a self-contained special education classroom and that he spend less than 40% of the instructional day in a general education setting. *Id.* at 13, 15.

On June 8, 2010, the last day of the 2009-2010 school year, PCSSD officials conducted a programming conference to discuss implementation of the IEP developed for W.P. by LRSD and to determine placement. Dkt. No. 1, at 18. Based on the IEP's recommendation that W.P. be placed in a self-contained special education classroom, it was determined that W.P. would attend Oak Grove Elementary School. *Id.* Present at the June 8, 2010 programming conference were W.P.'s zone-based special education resource teacher, the school's assistant principal, and the Pearsons. *Id.*

A second programming conference was conducted on September 13, 2010 to determine W.P.'s curriculum. Dkt. No. 1, at 23. Present at the second programming conference were the Pearsons and W.P.'s self-contained classroom teacher. *Id.* The IEP developed at the meeting indicates that all of W.P.'s coursework and activities would be "STAR." *Id.* W.P.'s self-contained classroom teacher testified at the hearing that STAR, which stands for "Strategic Teaching to Acquire Responsibility," is equivalent to what other school districts refer to as alternative learning classes for students with behavior problems. *Id.*

W.P. continued to progress on grade level while in the STAR program, but his behavior issues persisted. Dkt. No. 1, at 34, 38. Following an incident involving W.P. and another student at Oak Grove, the second in nine days, the Pearsons filed a due process complaint with the Arkansas Department of Education, alleging that PCSSD failed to provide W.P. a FAPE during the 2010-2011 school year. *Id.* at 34.

The hearing officer to whom the Pearsons' due process complaint was assigned heard testimony and received evidence on February 16, 2011 and February 17, 2011. On March 22, 2011, the hearing officer issued a Final Decision and Order concluding that PCSSD had denied W.P. a FAPE.

The hearing officer concluded that PCSSD "fail[ed] to provide the appropriate personnel at the programming conference," and therefore "deprived the parents [of] their entitlement of being able to be fully informed and participate in the decision making process." Dkt. No. 1, at 21, 44.

The failure of PCSSD during the initial programming conference, the hearing officer concluded, "was having not taken the time to determine whether the IEP was appropriate for the student" and not considering "how [the IEP] might be implemented in a less restrictive environment." Dkt. No. 1, at 21. He found that neither the Pearsons nor the individuals representing PCSSD during the June 8, 2010 programming conference "had any knowledge as to the program and placement they ultimately decided on." *Id.* at 22.

The hearing officer noted similar failures with respect to the September 13, 2012 programming conference. Other than the Pearsons, the only person who attended the conference was W.P.'s self-contained classroom teacher. Dkt. No. 1, at 23. The hearing officer noted that PCSSD failed to develop any academic goals and objectives for W.P. during the September 13, 2012 programming conference. *Id.* at 34. He found PCSSD's belief that no academic goals and objectives were necessary to be "contrary to the requirements" of the IDEA. *Id.* at 35.

The hearing officer also determined that PCSSD failed to develop an appropriate behavior intervention plan for W.P. Dkt. No. 1, at 34, 38. The hearing officer found that the behavior management plan utilized by LRSD while W.P. was a student there was developed for

a regular education classroom setting and, as such, "was not necessarily an appropriate plan for the STAR classroom." *Id.*

Despite "ample testimony and evidence that [PCSSD] attempted to focus on [W.P.'s] unique needs," the hearing officer found that PCSSD, in implementing an IEP that did not contain any specialized instruction in any academic areas and in adopting a behavior management plan designed for a regular education classroom rather than a self-contained one, ultimately failed to consider them. Dkt. No. 1, at 38. While not faulting PCSSD for its "reliance on the professional decisions" of LRSD, the hearing officer found PCSSD's "accept[ance] of the previous district's decision without the presence of the persons whose responsibility it was going to be to implement the IEP" to be "totally inappropriate." *Id.* at 21, 38.

> The alleged violations of not following the IDEA's due process procedures such as discontinuing occupational therapy services, not determining the Student's present level of performance, failing to obtain parental consent for an occupational therapy evaluation, failing to provide the Parents with notice of an IEP meeting, and not providing the Parents with reports of progress on the Student's goals and objectives, were not shown by the evidence or testimony to warrant a judgment that they failed to follow due process procedures in regard to these allegations. However, for the District to have not included appropriate school personnel as well as other persons knowledgeable of the Student's disabilities in their initial and subsequent programming conferences, and failure to develop and implement an appropriate behavior intervention plan, along with appropriate academic goals and objectives have been shown to be of sufficient violation to warrant a judgment for the denial of FAPE.

*Id.* at 44.

The hearing officer ordered a comprehensive evaluation of W.P. and the development of an appropriate IEP based on the evaluation. Dkt. No. 1, at 45. In addition, the hearing officer awarded W.P. 9,900 minutes of compensatory education services. *Id.*

The Pearsons filed this action seeking an award of attorneys' fees on June 30, 2011. The Pearsons allege that they are entitled to an award of attorneys' fees as a prevailing party under

the IDEA. PCSSD filed an answer on August 16, 2011 denying that the Pearsons are a prevailing party and asserting the following affirmative defense:

> Pursuant to the IDEA . . . any party aggrieved by the findings and decision in a hearing under the IDEA has the right to bring a civil action . . . within ninety (90) days after the date on which the hearing officer's final decision is rendered . . . . The District is a party aggrieved by the findings and decision made in the hearing conducted by the hearing officer . . . in that the decision of the hearing officer erroneously found that the District had violated the IDEA . . . in connection with the educational services provided by [the District] to Plaintiff's child.

The Pearsons filed a motion for summary judgment on May 10, 2012 (Dkt. No. 10). PCSSD filed a cross-motion for summary judgment on May 11, 2012 challenging the hearing officer's March 22, 2011 Final Decision and Order (Dkt. No. 14). PCSSD filed a response to the Pearsons' motion for summary judgment on May 21, 2012 (Dkt. No. 20). PCSSD contends that the Pearsons are not a prevailing party under the IDEA because the hearing officer's decision that PCSSD denied W.P. a FAPE during the first semester of the 2010-2011 school year is against the preponderance of the evidence.

On June 15, 2012, following a telephone conference during which counsel for the parties agreed that this matter could be taken up on the parties' cross-motions for summary judgment, the Court issued an order removing the case from the Court's trial docket. The Court gave the Pearsons until July 9, 2012 to file a response in opposition to PCSSD's motion for summary judgment and PCSSD until July 23, 2012 to file a reply in further support of its motion for summary judgment. In their response, filed on July 9, 2012, the Pearsons contend that PCSSD's challenge to the hearing officer's Final Decision and Order is untimely (Dkt. No. 25). PCSSD filed its reply brief on July 27, 2012 (Dkt. No. 30) after obtaining an extension of time from the Court.

## II. Applicable Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to establish by "specific facts" that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An issue of fact is material only if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

When reviewing a hearing officer's decision under the IDEA, "the district court is required to receive the records of the administrative proceedings, hear additional evidence at the request of a party, and independently determine the appropriate relief based on a preponderance of the evidence . . . ." *Fort Osage R-1 Sch. Dist. v. Simms*, 641 F.3d 996, 1002 (8th Cir. 2011). "Judicial review of administrative proceedings under the IDEA is limited, because 'judges are not trained educators.'" *C.B. ex rel. B.B. v. Special Sch. Dist. No. 1*, 636 F.3d 981, 988 (8th Cir. 2011) (quoting *E.S. v. Independent Sch. Dist. No. 196*, 135 F.3d 566, 569 (8th Cir. 1998)). While the court is "'obligated to determine independently the legal significance of the [applicable] facts,'" *K.E. ex rel. K.E. v. Independent Sch. Dist. No. 15*, 647 F.3d 795, 804 (8th Cir. 2011) (alteration in original) (quoting *CJN v. Minneapolis Pub. Schs.*, 323 F.3d 630, 636-37 (8th Cir. 2003)), it "must give 'due weight' to the results of the administrative proceedings and not substitute its 'own notions of sound educational policy for those of the school authorities

which they review.'" *C.B.*, 636 F.3d at 988-89 (quoting *Board of Educ. v. Rowley*, 458 U.S. 176, 205-06 (1982)).

### III. Analysis

"In any action or proceeding brought under the [IDEA], the court, in its discretion, may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3). The IDEA also permits any party aggrieved by the hearing officer's decision to bring a civil action challenging the hearing officer's findings and conclusions within 90 days of the decision. 20 U.S.C. § 1415(i)(2). The resolution of this matter turns, in part, on the interplay between these two provisions.

### A. Prevailing Party Status

The Pearsons contend they are a prevailing party entitled to an award of attorneys' fees under the IDEA because the hearing officer awarded them the relief they sought in their due process complaint. A prevailing party is one who obtains "'actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Birmingham v. Omaha Sch. Dist.*, 298 F.3d 731, 734 (8th Cir. 2002) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties . . . ." *Texas State Teachers Ass'n v. Garland Independent Sch. Dist.*, 489 U.S. 782, 792-93 (1989). The right to compensatory education is actual relief on the merits that alters the legal relationship between the parties. *Birmingham*, 298 F.3d at 734.

The Pearsons sought and were awarded, among other things, 9,900 minutes of compensatory education services. Therefore, they are prevailing parties under the IDEA.

PCSSD argues in its cross-motion for summary judgment and in its response to the Pearsons' motion for summary judgment that the Pearsons are not a prevailing party entitled to an award of attorneys' fees because the hearing officer's decision that PCSSD denied W.P. a FAPE is against the preponderance of the evidence. While the Pearsons acknowledge that an award of fees would be vacated in the event the hearing officer's decision is reversed, *see J.P. ex rel. Peterson v. County Sch. Bd. of Hanover County*, 516 F.3d 254 (4th Cir. 2008); *Pottgen v. Missouri State High Sch. Activities Ass'n.*, 103 F.3d 720 (8th Cir. 1997), they contend that PCSSD did not bring a timely action to challenge the hearing officer's findings and conclusions.

The Pearsons are correct that prevailing party status is determined "without regard to whether [the] decision on the underlying merits is correct." *Bishop v. Committee on Prof'l. Ethics and Conduct of the Iowa State Bar Ass'n*, 686 F.2d 1278, 1290 (8th Cir. 1982); *see United States v. Ford*, 650 F.2d 1141, 1144, n.1 (9th Cir. 1981) ("[T]here is no right to review or redetermine any of the issues in the underlying action solely for the purpose of deciding the attorney's fees question."). However, "[i]f [a review of the merits] were prohibited in this context, parties would file 'protective complaints' to preserve issues adjudicated against them, even when they otherwise would countenance the administrative judgment, for fear that their adversaries would file complaints just before the statute of limitations expired . . . ." *Jonathan H. v. Souderton Area Sch. Dist.*, 562 F.3d 527, 530 (3rd Cir. 2009).

The plaintiff in *Jonathan H.* brought an action under the IDEA on the 90th day after the hearing officer's decision—the last day for an aggrieved party to bring a civil action challenging the decision. The defendant school district answered and filed a counterclaim challenging the hearing officer's award of compensatory education. The Third Circuit rejected plaintiff's

contention that the school district's challenge was time barred under the IDEA because the district failed to bring an action within 90 days of the hearing officer's decision.

> [A] defendant does not "bring an action" by asserting a counterclaim; only a plaintiff may "bring an action" for purposes of the IDEA. The defendant then files a responsive pleading . . . in which it can include a claim for relief against the opposing party. [The IDEA] limits a party's right to "bring an action" to within 90 days after the final administrative decision. Thus, the plain language of the statutory text does not limit a party's right to pursue a counterclaim because the assertion of a counterclaim is not "bring[ing] an action."

*Id.* at 530 (citations omitted).

Many federal courts that have considered the issue have reached the same conclusion that the Third Circuit did in *Jonathan H*. *See, e.g.*, *Ruben A. v. El Paso Independent Sch. Dist.*, 414 Fed. Appx. 704 (5th Cir. 2011); *Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380 (4th Cir. 2000); *Doe v. Regional Sch. Unit No. 21*, 2011 WL 2160935 (D. Me. 2011); *Orange County Health Care Agency v. Dodge*, 793 F. Supp. 2d 1121 (C.D. Cal. 2011); *Katherine G. ex rel. Cynthia G. v. Kentfield Sch. Dist.*, 261 F. Supp. 2d 1159 (N.D. Cal. 2003).

Of course, PCSSD did not properly seek review of the hearing officer's decision. Rather than file a counterclaim like the school district in *Jonathan H* did, PCSSD plead an affirmative defense and made a cross-motion for summary judgment. PCSSD, in filing an answer containing an affirmative defense that tracks the language of the section in the IDEA that allows an aggrieved party to file a civil action, likely intended to challenge the merits of the hearing officer's decision. If a party mistakenly designates a counterclaim as a defense, "the court must, if justice requires, treat the pleading as though it were correctly designated . . . ." Fed. R. Civ. P. 8(c)(2); *see Reiter v. Cooper*, 507 U.S. 258 (1993). Courts have done so in IDEA actions. *See, e.g.*, *Kirkpatrick*, 216 F.3d 380; *Mr. & Mrs. A. ex rel. D.A. v. New York City Dept. of Educ.*, 769 F. Supp. 2d 403 (S.D.N.Y. 2011).

If the Court were to adopt the reasoning articulated by the Third Circuit in *Jonathan H* and treat PCSSD's affirmative defense as a counterclaim to reach the merits of the hearing officer's decision, the outcome of this dispute would not change. For the reasons that follow, the Court would uphold the decision of the hearing officer.

### B. Hearing Officer's Decision

PCSSD contends that the hearing officer's decision that PCSSD denied W.P. a FAPE is not supported by a preponderance of the evidence. In a suit by an aggrieved party under the IDEA, the court engages in a two-fold inquiry. The court inquires first whether the school district complied with the procedures set forth in the IDEA. The court then determines whether the individualized educational program developed through the IDEA's procedures is reasonably calculated to enable the child to receive educational benefits. *Rowley*, 458 U.S. at 206-07. "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Id.* at 207.

The hearing officer found that PCSSD failed to include appropriate school personnel as well as other persons knowledgeable of W.P.'s disabilities in their initial and subsequent programming conferences and, therefore, denied the Pearsons a meaningful opportunity to participate in the process of formulating an IEP for W.P. With respect to the June 8, 2010 programming conference, the hearing officer found the absence of three individuals notable: (1) a regular education classroom teacher from W.P.'s zone-based school or the school where placement was being proposed; (2) other personnel from PCSSD to determine eligibility or need for services; and (3) the self-contained classroom teacher from the school where placement was being proposed. The hearing officer also found significant the fact that the self-contained classroom teacher was not asked to review the IEP prior to the June 8, 2010 placement decision.

The hearing officer also found that PCSSD failed to develop and implement an appropriate behavior intervention plan, along with appropriate academic goals and objectives for the 2010-2011 school year. These procedural violations, according to the hearing officer, resulted in an IEP that was not reasonably calculated to enable W.P. to receive educational benefits, "warrant[ing] a judgment for the denial of FAPE."

A school district "must follow the procedures set forth in the IDEA to formulate an IEP tailored to meet the disabled child's unique needs." *School Bd. of Independent Sch. Dist. No. 11 v. Renollett*, 440 F.3d 1007, 1011 (8th Cir. 2006). "Congress intended that such procedures would guarantee 'parents and guardians a large measure of participation' in the IEP process and would assure that the resulting IEP included 'much if not all of what Congress wished in the way of substantive content.'" *K.E.*, 647 F.3d at 804 (quoting *Rowley*, 458 U.S. at 206-07). As such, "the importance Congress attached to [them] cannot be gainsaid." *Rowley*, 458 U.S. at 205. However, not every procedural violation results in the denial of a FAPE. "An IEP should be set aside only if procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." *Renollett*, 440 F.3d at 1011 (internal quotation marks omitted).

PCSSD does not challenge the hearing officer's specific findings regarding the makeup of the IEP team. It contends, however, that a failure to have appropriate personnel at the programming conferences does not support the hearing officer's ultimate decision that PCSSD denied W.P. a FAPE.

The Court finds that PCSSD has failed to carry its burden of demonstrating that the hearing officer's decision is against the preponderance of the evidence. "A properly constituted

IEP team is in the best position to develop an IEP that suits the peculiar needs of the individual student." *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 941 (9th Cir. 2007). The hearing officer found that neither the Pearsons nor the individuals representing PCSSD during the June 8, 2010 programming conference "had any knowledge as to the program and placement they ultimately decided on." An IEP meeting is insufficient where the participants are unfamiliar with the placement options available. *Hollenbeck v. Board of Educ.*, 699 F. Supp. 658 (N.D. Ill. 1988). Moreover, where there is a possibility that the student will participate in a regular education environment, as here, the failure to involve a regular education teacher in the placement decision can result in a flawed IEP. *M.L. v. Federal Way Sch. Dist.*, 394 F.3d 634 (9th Cir. 2004); *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840 (6th Cir. 2004). Based on these authorities, and giving due weight to the proceedings below, the Court rejects PCSSD's argument and concludes that the hearing officer's decision that PCSSD denied W.P. a FAPE by failing to have appropriate personnel at the programming conferences was not erroneous.

The Court acknowledges that the first programming conference was conducted on the last day of the school year, within days of W.P. enrolling in PCSSD, and that the second programming conference occurred a few weeks after school began. The hearing officer found the time constraints facing PCSSD "understandable." Nevertheless, he found that "even a cursory review of the IEP developed by the LRSD would suggest that a more intensive gathering of an IEP team would be needed to address the Student's special education needs. Had such an IEP meeting been held, even if it needed to have been held closer to the beginning of the new school year, it is possible that more consideration would have been given the Student's unique needs." The Court will not substitute its own judgment for that of the hearing officer in this regard.

PCSSD next challenges the hearing officer's finding that it did not develop an appropriate behavior intervention plan for W.P. The hearing officer found that PCSSD failed to develop and implement an appropriate behavior intervention plan, along with appropriate academic goals and objectives for the 2010-2011 school year. The behavior intervention plan developed by PCSSD was inappropriate, the hearing officer found, because it was designed for a regular education classroom rather than the self-contained one where W.P. was placed. These procedural violations, according to the hearing officer, resulted in an IEP that was not reasonably calculated to enable W.P. to receive educational benefits.

"[I]n the case of a child whose behavior impedes the child's learning or that of others," the IEP team "must consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior." 20 U.S.C. 1414(d)(3)(B)(i). When a child's primary disability is a behavioral disorder, an IEP that does not appropriately address the child's behavior problems may result in a denial of FAPE. *Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022, 1028 (8th Cir. 2002). In *Neosho*, the Eighth Circuit held that an IEP that did not adequately address a student's behavior problems, where the behavior problems were a major concern, was not reasonably calculated to achieve educational benefits, notwithstanding some evidence of academic progress. *Id.*; *accord C.B. ex rel. B.B. v. Special Sch. Dist. No. 1*, 636 F.3d 981 (8th Cir. 2011).

It is clear from the record that W.P.'s behavior issues were a major concern. PCSSD officials testified that they understood W.P.'s disability to be behavioral rather than academic. Nevertheless, PCSSD failed to develop a behavior intervention plan for use in a self-contained classroom setting.

PCSSD contends that W.P.'s performance at or above grade level while in the STAR program is evidence that the IEP was reasonably calculated to provide educational benefit. "Whether a child can 'achieve passing marks and advance from grade to grade' are both 'important factor[s]' when determining whether a school district has developed an IEP that is 'reasonably calculated'" to provide educational benefit. *K.E.*, 647 F.3d at 809 (alteration in original) (quoting *Rowley*, 458 U.S. at 200-01). Academic progress alone, however, does not mean that a child has received a FAPE, particularly when the child suffers from a behavioral disability. *Id*. "Academic and behavioral matters . . . are not always independent of each other." *CJN*, 323 F.3d at 642. Thus, the court must judge each IEP on whether it is "responsive to the student's specific disabilities, whether academic or behavioral." *K.E.*, 647 F.3d at 809.

The Court concludes that PCSSD's failure to develop an appropriate behavior intervention plan for W.P. resulted in an IEP that was not reasonably calculated to achieve educational benefits. A preponderance of the evidence establishes that while W.P. continued to perform at or above grade level at Oak Grove, his behavior problems persisted. It was not until after W.P. was moved to Chenal Elementary, his home-based school, that the behavior problems began to subside and he began to make significant academic progress. Dkt. No. 1, at 43. Because PCSSD has failed to show more than *de minimis* academic progress, the Court will not disturb the hearing officer's decision that PCSSD's failure to develop an appropriate behavior intervention plan resulted in the denial of FAPE.

### C. Reasonableness of Fee

In determining a reasonable fee, the court considers first the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461

U.S. 424, 433 (1983). The court then considers the degree of success obtained. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

The Pearsons' counsel charged $200.00 per hour for her services and $135.00 per hour for associates. These rates are reasonable. The overall number of hours billed by the Pearsons' counsel also appears to be reasonable. However, the Court finds that the fee should be reduced because the hearing officer concluded that some of the claims asserted by the Pearsons in their due process complaint were without merit. *See Hensley*, 461 U.S. at 434; *Neosho*, 315 F.3d at 1030-31. Specifically, the hearing officer found that PCSSD did not violate the IDEA in failing to determine W.P.'s present level of performance and to consider the need for further testing and evaluation. The Pearsons also failed to prevail on their claims relating to occupational therapy. The materials in the record before the Court do not permit the Court to allocate hours spent by claims asserted; the billing records do not provide that level of detail. Accordingly, the fee will be reduced from $16,893.30 to $12,500.00. *See Hensley*, 461 U.S. at 436-37 (noting that the court may simply reduce the fee to account for limited success).

### IV. Conclusion

For the foregoing reasons, the Pearsons' motion for summary judgment (Dkt. No. 10) is granted, and the Pearsons are awarded $12,500.00 in attorneys' fees. PCSSD's motion for summary judgment (Dkt. No. 14) is denied.

SO ORDERED this 25th day of January, 2013.

_____
Kristine G. Baker
United States District Judge